**MATTHEW L. SHARP, LTD.**
Matthew L. Sharp.
432 Ridge St.
Reno, NV 89501
Phone: (775) 324-1500
Email: matt@mattsharplaw.com

*Attorneys for Plaintiff*

[***Additional Counsel Listed Below***]

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| MELVYN KLEIN, Derivatively on Behalf of ORMAT TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> TODD C. FREELAND, RAVIT BARNIV, DAN FALK, DAVID GRANOT, STAN H. KOYANAGI, YUICHI NISHIGORI, STANLEY B. STERN, BYRON WONG, DAFNA SHARIR, ISSAC ANGEL, and DORON BLACHAR, <br><br> Defendants, <br><br> and <br><br> ORMAT TECHNOLOGIES, INC., <br><br> Nominal Defendant. | Case No.: 3:18-cv-00439-MMD-WCG <br><br><br><br><br> **AMENDED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT WITH JURY DEMAND** |

Plaintiff Melvyn Klein ("Plaintiff"), by and through his undersigned counsel, derivatively on behalf of Nominal Defendant Ormat Technologies, Inc. ("Ormat" or the "Company"), submits this Verified Shareholder Derivative Complaint (the

1

"Complaint").  Plaintiff's allegations are based upon his personal knowledge as to himself and his own acts, and upon information and belief, developed from the investigation and analysis by Plaintiff's counsel, including a review of publicly available information, including filings by Ormat with the U.S. Securities and Exchange Commission ("SEC"), press releases, news reports, analyst reports, investor conference transcripts, publicly available filings in lawsuits, and matters of public record.

## NATURE OF THE ACTION

1.      This is a shareholder derivative action brought in the right, and for the benefit, of Ormat against certain of its officers and directors seeking to remedy Defendants' breach of fiduciary duties, abuse of control, unjust enrichment, and violations of Section 14(a) of the Securities Exchange Act of 1934 by the Director Defendants (defined below) that occurred between August 8, 2017 and the present (the "Relevant Period") and have caused substantial harm to Ormat.

## JURISDICTION AND VENUE

2.      Pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act, this Court has jurisdiction over the claims asserted herein for violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder. This Court has supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367.

3.      Venue is proper in this Court under 28 U.S.C. § 1931(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District, and by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

4.      *Plaintiff Melvyn Klein* is, and was at relevant times, a shareholder of Ormat.  Plaintiff will fairly and adequately represent the interests of the shareholders in enforcing the rights of the Company.

5.      *Nominal Defendant Ormat* is engaged in the geothermal and recovered energy power business and maintains Electricity and Power business segments.  The

Company was incorporated in Delaware and maintains its principal executive offices at 6225 Neil Road, Reno, Nevada 89511.  Its common stock is traded on the New York Stock Exchange using the ticker symbol "ORA".

6.      **Defendant Todd C. Freeland** ("Freeland") has been a member of the Company's Board of Directors ("Board") since July 26, 2017.  Freeland is a member of the Compensation Committee and is the Chairman of the Nominating and Corporate Governance Committee.  The Company's definitive proxy statement on Form DEF 14A filed with the SEC on March 27, 2018 (the "2018 DEF 14A") describes his background as follows:

> Todd C. Freeland has been a member of our Board since July 26, 2017. He currently serves as Co-Head of Energy and Eco Services Business Headquarters and CEO of Energy and Eco Services Europe at ORIX Corporation ("ORIX"), where he is leading the firm's global expansion into sectors including renewable energy, resource and waste management, and other energy supply, conservation and storage activities.

Defendant Freeland was designated by ORIX to serve as an Ormat director as part of the agreements between Ormat and ORIX, entered on or about May 4, 2017, and as more fully discussed herein.

7.      **Defendant Ravit Barniv** ("Barniv") has been a member of the Company's Board since November 15, 2015.  Barniv is a member of the Nominating and Corporate Governance Committee and Investment Committee and is the Chairperson of the Compensation Committee.

8.      **Defendant Dan Falk** ("Falk") has been a member of the Company's Board since November 12, 2004.  Falk is a member of the Compensation Committee, Nominating and Corporate Governance Committee, and Special Committee, and is the Chairman of the Audit Committee.

9.      **Defendant David Granot** ("Granot") has been a member of the Company's Board since May 22, 2012.  Granot is a member of the Compensation Committee, Audit Committee, and Special Committee, and is the Chairman of the Investment Committee.

10.    **Defendant Stan H. Koyanagi** ("Koyanagi") has been a member of the Company's Board since July 26, 2017.   The Company's 2018 DEF 14A describes his background as follows:

> Stan H. Koyanagi has been a member of our Board since July 26, 2017. Mr. Koyanagi has served on the board of directors of ORIX Corporation, a Tokyo-based diversified financial company, and was promoted to Corporate Senior Vice President and Global General Counsel of ORIX Corporation in June 2017.  Previously, Mr. Koyanagi served in senior legal positions at ORIX USA Corporation, the US holding company of ORIX Corporation, and KB HOME, a NYSE-listed homebuilder.

Defendant Koyanagi was designated by ORIX to serve as an Ormat director as part of the agreements between Ormat and ORIX, entered on or about May 4, 2017, and as more fully discussed hereunder.

11.    **Defendant Yuichi Nishigori** ("Nishigori") has been a member of the Company's Board since July 26, 2017.   Nishigori is a member of the Investment Committee.  The Company's 2018 DEF 14A describes his background as follows:

> Yuichi Nishigori has been a member of our Board since July 26, 2017. Mr. Nishigori presently serves as Head of Energy and Eco Services Business Headquarters at ORIX Corporation and has served as a member of the Board of Directors of ORIX since 2015.

Nishigori was designated by ORIX to serve as an Ormat director as part of the agreements between Ormat and ORIX, entered on or about May 4, 2017, and as more fully discussed hereunder.

12.    **Defendant Stanley B. Stern** ("Stern") has been a member of the Company's Board since November 16, 2015.   Stern is a member of the Special Committee.

13.    **Defendant Byron Wong** ("Wong") has been a member of the Company's Board since July 26, 2017.  Wong is a member of the Audit Committee.

14.    **Defendant Dafna Sharir** ("Sharir") has been a member of the Company's Board since May 2018.

15.    Defendants Freeland, Barniv, Falk, Granot, Koyanagi, Nishigori, Stern, Wong, and Sharir are collectively referred to hereinafter as the "Director Defendants."

4

**The Company's Officers**

16.    ***Defendant Isaac Angel*** ("Angel") began serving as an officer of the Company on April 1, 2014 and has served as its Chief Executive Officer ("CEO") since July 1, 2014.

17.    ***Defendant Doron Blachar*** ("Blachar") has served as the Company's Chief Financial Officer ("CFO") since April 2, 2013.

18.    Defendants Angel and Blachar are collectively referred to hereinafter as the "Individual Defendants."

**CODE OF BUSINESS CONDUCT AND ETHICS**

19.    As members of Ormat's Board, the Director Defendants were held to the highest standards of honesty and integrity and charged with overseeing the Company's business and assuring the integrity of its financial and business records.

20.    Ormat's Code of Business Conduct and Ethics states in part:

The Board of Directors of Ormat Technologies, Inc. (with its subsidiaries, the "Corporation") has adopted this code of business conduct and ethics (this "Code") to:

- Promote honest and ethical conduct, including fair dealing and the ethical handling of conflicts of interest and corporate opportunities;

- Promote the protection and proper use of Corporation assets;

- Maintain the confidentiality of information acquired in the course of business;

- Promote compliance with applicable laws and governmental rules and regulations; and

- Encourage the prompt reporting of any illegal or unethical behavior.

- All directors, officers and employees of the Corporation are subject to this Code and are expected to adhere to and comply with those principles and procedures set forth in this Code that apply to them....

*        *        *

///

///

5

**Honest and Candid Conduct**

Each director, officer and employee owes a duty to the Corporation to act with integrity, which, among other things, requires being honest and candid, and precludes deceit and subordination of principle.

Each director, officer and employee must:

- Act with integrity, including being honest and candid while still maintaining the confidentiality of information where required by or consistent with applicable law or the Corporation's policies;

- Observe both the form and spirit of laws and governmental rules and regulations, accounting standards and Corporation policies;

- Adhere to a high standard of business ethics; and

- Not directly or indirectly take any action to fraudulently influence, coerce, manipulate or mislead the Corporation's independent public auditors for the purposes of rendering the financial statements of the Corporation misleading.

**Fair Dealing**

The Corporation's policy is to conduct our affairs in a spirit of honest business competition. The Corporation will use all lawful means to meet competition and maximize its profits, but the Corporation will not engage in unlawful trade practices. The Corporation does not seek competitive advantages through illegal or unethical business practices. Each director, officer and employee should endeavor to deal fairly with the Corporation's customers, service providers, suppliers, competitors and employees. No director, officer or employee should take unfair advantage of anyone, whether through abuse of privileged information, misrepresentation of material facts or any other unfair dealing practice.

\*       \*       \*

**Compliance With Law**

It is the Corporation's policy to comply with all applicable laws, rules and regulations. The need to comply with such laws, rules and regulations means that there exists a personal obligation on each director, officer and employee to adhere to the standards and restrictions imposed by those laws, rules and regulations.

\*       \*       \*

**Doing Business Internationally**

While the Corporation must adapt to business customs and market practices in global markets, all directors, officers and employees shall adhere to applicable United States laws and regulations and these standards. Every employee in our international operations will also respect the laws, cultures and customs of all countries in which the

Corporation operates and will conduct the Corporation's overseas activities in a way that contributes to development in such locales.

\*       \*       \*

## Disclosure

Each director, officer or employee involved in the Corporation's disclosure process, including the CEO, CFO, the Controller, the Secretary and other persons having similar functions (the "Senior Financial Officers"), is required to be familiar and comply with the Corporation's disclosure controls and procedures and its internal controls over financial reporting, to the extent relevant to his or her area of responsibility, so that the Corporation's public reports and documents filed with the U.S. Securities and Exchange Commission ("SEC"), the New York Stock Exchange, Inc. ("NYSE") or state regulators comply in all materials respects with the applicable federal securities laws, SEC and NYSE rules and state laws, rules and regulations. In addition, each such person having directorial or supervisory authority regarding SEC, NYSE or state filings or the Corporation's other public communications concerning its general business, results of operations, financial condition and prospects should, to the extent appropriate within his or her area of responsibility, consult with other Corporation officers and employees and take other appropriate steps regarding these disclosures with the goal of making full, fair, accurate, timely and understandable disclosure.

Each director, officer or employee who is involved in the Corporation's disclosure process, including without limitation the Senior Financial Officers, must:

- Familiarize himself or herself with the disclosure requirements applicable to the Corporation as well as the business and financial operations of the Corporation;

- Not knowingly misrepresent, or cause others to misrepresent, facts about the Corporation to others, whether within or outside the Corporation, including to the Corporation's independent auditors, governmental regulators and self-regulatory organizations; and
- Properly review and critically analyze proposed disclosure for accuracy and completeness or, where appropriate, delegate this task to others.

\*       \*       \*

## Accuracy and Retention of Business Records

## A.      Record Keeping

All accounts and records of the Corporation shall be documented in a manner that: (i) clearly describes and identifies the true nature of business transactions, liability or equity; and (ii) properly, and in a timely manner, classifies and records entries on the books of account in conformity with U.S. Generally Accepted Accounting Principles. No record, entry or document shall be deliberately false, distorted, misleading, misdirected, incomplete or suppressed.

**B.      Internal Control Structure and Procedures for Financial Reporting**

The Corporation has established internal controls over financial reporting designed to ensure that assets are protected and properly used and that financial records and reports are accurate and reliable. The internal control structure and procedures for financial reporting is not part of this Code. Employees share the responsibility for maintaining and complying with required internal controls over financial reporting. Improper accounting and documentation and fraudulent financial reporting are not only contrary to Corporation policy but may also be in violation of federal and/or state laws and regulations. Such violations potentially involve personal liability, both civil and criminal, as well as sanctions against the Corporation.

21.      Ormat also has a separate Code of Ethics Applicable to Senior Executives, which provides in relevant part:

On October 21, 2004, the Board of Directors of Ormat Technologies, Inc. (the "Corporation") adopted this Code of Ethics Applicable to Senior Executives as contemplated by the Sarbanes-Oxley Act of 2002. It is critical to the success of the Corporation and in the best interests of its stockholders that its employees conduct themselves honestly and ethically. In particular, each senior executive of the Corporation, including the Chairman, the Chief Executive Officer, the Chief Financial Officer, the Controller, the Corporation's Secretary and the Chief Operating Officer ("Senior Executives"), are required to observe the highest standards of ethical business conduct, including strict adherence to this Code of Ethics Applicable to Senior Executives (this "Code") and the Corporation's Code of Business Conduct and Ethics applicable to all employees, which this Code supplements. Accordingly, each Senior Executive must comply with the letter and spirit of the following:

- Each Senior Executive will act at all times honestly and ethically, including the ethical handling of actual or apparent conflicts of interest between personal and professional relationships. For purposes of this Code, the phrase "actual or apparent conflict of interest" shall be broadly construed and includes, for example, direct conflicts, indirect conflicts, potential conflicts, apparent conflicts and any other personal, business or professional relationship or dealings that has a reasonable possibility of creating even the mere appearance of impropriety.

                              *      *      *

- Each Senior Executive must ensure that all reasonable and necessary steps within his or her areas of responsibility are taken to provide full, fair, accurate, timely and understandable disclosure in reports and documents that the Corporation files with or submits to the Securities and Exchange Commission (the "SEC") or state regulators, and in all other regulatory filings. In addition, Senior Executives must provide full, fair, accurate, and

8

understandable information whenever communicating with the Corporation's stockholders or the general public.

- Senior Executives shall not directly or indirectly take any action to fraudulently influence, coerce, manipulate or mislead the Corporation's independent public auditors for the purposes of rendering the financial statements of the Corporation misleading.

- Senior Executives must promptly report to the Corporation's Audit Committee any significant deficiencies or material weaknesses, including corrective actions, in the design or operation of the Corporation's internal controls over financial reporting, which could adversely affect the Corporation's ability to record, process, summarize and report financial data.

\*     \*     \*

- All Senior Executives must conduct Corporation business in compliance with all applicable federal, state, foreign and local laws, rules and regulations, including insider trading laws.

- It is each Senior Executive's responsibility to notify promptly the Secretary of the Corporation or Chairman of the Audit Committee or the Board of Directors regarding any actual or potential violation of this Code and/or any applicable securities or other laws, rules or regulations by any Senior Executive or of the Corporation's Code of Business Conduct and Ethics by any employee. Senior Executives may choose to remain anonymous in reporting any possible violation of this Code. All Senior Executives are responsible for ensuring that their own conduct complies with this Code.

22.   Ormat's Audit Committee Charter provides in relevant part:

**PURPOSE**

The purpose of the Audit Committee (the "Committee") of the Board of Directors (the "Board") of Ormat Technologies, Inc. (the "Company") is (A) to assist the Board in fulfilling its oversight responsibilities with respect to:

- the integrity of the Company's financial statements;

- the effectiveness of the Company's internal controls over financial reporting;

- the Company's compliance with legal and regulatory requirements;

\*     \*     \*

**DUTIES AND RESPONSIBILITIES**

In furtherance of its purpose and in addition to the duties and responsibilities set forth elsewhere in this Charter, the Committee will:

9

**Financial Statements & Disclosures**

Review and discuss with management and the independent auditor the annual audited financial statements, including the Company's specific disclosures under "Management's Discussion and Analysis of Financial Condition and Results of Operations", and recommend to the Board whether the audited financial statements should be included in the Company's annual report on Form 10-K.

Review and discuss with management and the independent auditor the quarterly financial statements, including the results of the independent auditor's review of the quarterly financial statements.

Discuss with management and the independent auditor significant financial reporting issues and judgments made in connection with the preparation of the Company's financial statements, including any significant changes in the Company's selection or application of accounting principles.

Review and discuss with management and the independent auditor the adequacy of the Company's internal controls, any changes adopted in light of material control deficiencies and the adequacy of disclosures about changes in internal control over financial reporting.

Review and discuss with management and the independent auditor the Company's internal controls report and independent auditor's attestation prior to the filing of the Company's annual report on Form 10-K.

Review and discuss all quarterly reports submitted by the independent auditors concerning:

- all critical accounting policies to be used;

- all alternative treatments of financial information with U.S. generally accepted accounting principles ("GAAP") that have been discussed with management, consequences of the use of such alternative treatments and the treatment preferred by the independent auditor; and

- other material written communications between the independent auditor and management, such as any management letter.

Discuss with management the type and presentation of information to be included in earnings press releases, including the use of "pro forma" or "adjusted" or non-GAAP information, as well as financial information and earnings guidance provided to analysts and rating agencies.

Discuss with management and the independent auditor the effect of regulatory and accounting initiatives, as well as off-balance sheet arrangements, on the Company's financial statements.

Discuss with management the Company's major financial risk exposure and any steps management has taken to monitor and control such exposure, including the Company's risk assessment and management policies.

Discuss with the independent auditor the matters required to be discussed under the relevant Statements on Auditing Standards relating to the conduct of the audit, any difficulties encountered in the course of audit work, any restrictions placed on the scope of such work and any significant disagreements with management.

Review disclosures made to the Committee by the Company's Chief Executive Officer and Chief Financial Officer during their certification process for the Form 10-K and Form 10-Q about any significant deficiencies in the design or operation of internal controls or material weaknesses therein and any fraud involving management or other employees who play a significant role in administering the Company's internal controls.

Prepare and approve annually the audit committee report required by SEC rules to be included in the Company's annual proxy statement.

\*     \*     \*

**Compliance Oversight**

Obtain reports from management, the Company's senior internal auditing executive and the independent auditor that the Company and its subsidiaries are in compliance with applicable legal requirements and the Company's Code of Business Conduct and Ethics.  Review reports and disclosures of insider and affiliated party transactions. Advise the Board with respect to the Company's policies and procedures regarding compliance with applicable laws and regulations and with the Company's Code of Business Conduct and Ethics.

\*     \*     \*

## DUTIES OF THE DIRECTOR DEFENDANTS

23.     By reason of their positions as officers and/or directors of the Company, and because of their ability to control the business and corporate affairs of Ormat, the Director Defendants owed Ormat and its investors the fiduciary obligations of trust, loyalty, and good faith.  The obligations required the Director Defendants to use their utmost abilities to control and manage Ormat in an honest and lawful manner.  The Director Defendants were and are required to act in furtherance of the best interests of Ormat and its investors.

11

24.     Each director of the Company owes to Ormat and its investors the fiduciary duty to exercise loyalty, good faith, and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets.  In addition, as officers and/or directors of a publicly held company, the Director Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's operations, finances, and financial condition, as well as present and future business prospects, so that the market price of the Company's stock would be based on truthful and accurate information.

25.     To discharge their duties, the officers and directors of Ormat were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the affairs of the Company.  By virtue of such duties, the officers and directors of Ormat were required to, among other things:

(a)     ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

(b)     conduct the affairs of the Company in an efficient, businesslike manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)     properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's business prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

(d)     remain informed as to how Ormat conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiries in connection therewith, take steps to correct

such conditions or practices, and make such disclosures as necessary to comply with federal and state securities laws;

   (e) ensure that the Company was operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state and local laws, and rules and regulations; and

   (f) ensure that all decisions were the product of independent business judgment and not the result of outside influences or entrenchment motives.

26. Each Director Defendant, by virtue of his position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Director Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Ormat, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Director Defendants were aware, or should have been aware, posed a risk of serious injury to the Company.

27. The Director Defendants breached their duties of loyalty and good faith by causing the Company to issue false and misleading statements concerning the financial condition of the Company. As a result, Ormat has expended, and will continue to expend, significant sums of money related to investigations and lawsuits.

**Background and Materially False and Misleading**
**Statements Issued During the Period**

28. Ormat is primarily engaged in the geothermal and recovered energy power business. It conducts its business activities in two business segments:

- In the Electricity segment the Company develops, builds, owns and operates geothermal and recovered energy-based power plants in the U.S. and geothermal power plants in other countries around the world and sells

the electricity it generates. It also provides energy storage, demand response and energy management related services; and

- In the Product segment the Company designs, manufactures and sells equipment for geothermal and recovered energy-based electricity generation and remote power units and provides services relating to the engineering, procurement, construction, operation and maintenance of geothermal and recovered energy-based power plants.

29. On March 1, 2017, Ormat filed an Annual Report on Form 10-K with the SEC, announcing the Company's financial and operating results for the fiscal year ended December 31, 2016 (the "2016 10-K"). Regarding its controls and procedures, the Company stated:

**ITEM 9A. CONTROLS AND PROCEDURES**

**Disclosure Controls and Procedures**

The Company's management, including its Chief Executive Officer and Chief Financial Officer, have conducted an evaluation of the effectiveness of disclosure controls and procedures (as such term is defined in Rules 13a-15(e) and 15d-15(e) under the Exchange Act), as of the end of the period covered by this Annual Report on Form 10-K. ***Based on that evaluation, the Company's management, including the Chief Executive Officer and Chief Financial Officer, concluded as of December 31, 2016, that the disclosure controls and procedures were effective*** in ensuring that all material information required to be filed in reports that the Company files or submits under the Exchange Act has been recorded, processed, summarized and reported when required and the information is accumulated and communicated to the Company's management, including the Chief Executive Officer and the Chief Financial Officer, to allow timely decisions regarding required disclosure.

**Management's Report on Internal Control over Financial Reporting**

Management of the Company is responsible for establishing and maintaining adequate internal control over financial reporting, as defined under Rule 13a-15(f) under the Exchange Act. Internal control over financial reporting is a process designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles.

Because of its inherent limitations, internal control over financial reporting may not prevent or detect misstatements. Also, projections of any evaluation of effectiveness to future periods are subject to the risk

that controls may become inadequate because of changes in conditions, or that the degree of compliance with the policies and procedures may deteriorate.

*Management, under the supervision and participation of the Chief Executive Officer and Chief Financial Officer*, has evaluated the effectiveness of the Company's internal control over financial reporting as of December 31, 2016 using criteria established in Internal Control — Integrated Framework (2013) issued by the COSO and *concluded that the Company maintained effective internal control over financial reporting as of December 31, 2016*.

\* \* \*

**Changes in Internal Control over Financial Reporting**

No changes in the Company's internal control over financial reporting, as defined in Rule 13a-15(f) under the Exchange Act, have been identified during the Company's fourth fiscal quarter that have materially affected, or are reasonably likely to materially affect, the Company's internal control over financial reporting.

(Emphasis added)

30.   The 2016 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Angel and Blachar stating that the financial information contained in the 2016 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

31.   On May 4, 2017, Ormat entered into a Commercial Cooperation Agreement, Governance Agreement (the "ORIX Governance Agreement"), and a Registration Rights Agreement with ORIX.   These agreements were entered contemporaneously and in conjunction with a Stock Purchase Agreement between ORIX (as purchaser) and Defendants Angel, Blachar, and others[1] (as sellers) of Ormat stock. Pursuant to the Stock Purchase Agreement, ORIX will pay Angel, Blachar, and the other sellers approximately $627 million for nearly 11 million shares of Ormat common stock. As a result of this stock purchase, ORIX will beneficially own approximately 22% of the

---

[1]   The other identified parties are FIMI ENRG, Limited Partnership, an Israeli limited partnership, FIMI L.P., a Delaware limited partnership, and Bronicki Investments Ltd., an Israeli company.

outstanding shares of Ormat.  Excepting the Stock Purchase Agreement will hereafter be referred to as the "ORIX Transaction".

32.    On April 10, 2017, in its DEF 14A Definitive Proxy Statement (the "2017 DEF 14A"), Ormat identified the security ownership of certain beneficial owners and management as of March 16, 2017, as follows:

|  | Shares of Common Stock Beneficially Owned | |
| --- | --- | --- |
|  | Number | Percent |
| **Principal Stockholder:** | | |
| FIMI ENRG, L.P. and FIMI ENRG, Limited Partnership | 10,451,077[1] | 21.03% |
| Bronicki Investments Ltd. | 10,451,077[1] | 21.03% |
| Migdal Insurance & Financial Holdings Ltd. | 5,334,997[2] | 10.74% |
| Clal Insurance Enterprises Holdings Ltd. | 2,109,261[3] | 4.24% |
| Psagot Investment House Ltd. | 2,556,429[4] | 5.14% |
| Itshak Sharon (Tshuva) Delek Group Ltd & The Phoenix Holding ltd | 2,610,687[7] | 5.25% |
| The Vanguard Group | 3,046,343[8] | 6.13% |
| **Directors and Named Executive Officers** | | |
| Gillon Beck†† | 6,961,618(6)[9] | 14.02% |
| Dan Falk†† | 7,500[10] | — |
| Ami Boehm†† | 6,961,618(6)[11] | 14.02% |
| Robert F. Clarke†† | 17,000[12] | — |
| Robert E. Joyal†† | 7,500[13] | — |
| David Granot†† | 15,000[14] | — |
| Ravit Barniv | 7,500[15] | — |
| Stanley Stern | 7,500[15] | — |
| Isaac Angel | 150,000[16] | — |
| Doron Blachar† | 62,500[17] | — |
| Zvi Krieger | 0 | — |
| Shimon Hatzir | 0 | — |
| Bob Sullivan | 52,457[18] | — |
| Directors and Named Executive Officers as a group | 7,326,075[19] | 14.74% |

33.    Ormat relied on a Special Committee to evaluate the ORIX Transaction. The Special Committee was comprised of Defendants Falk, Granot, and Stern.  In its May 4, 2017 press release, the Company stated in part:

> A Special Committee of the Ormat board of directors was formed to evaluate and negotiate the shareholder arrangements proposed by ORIX. The Special Committee received independent legal counsel from Davis Polk & Wardwell LLP.  The agreements between ORIX and Ormat were executed by Ormat following the unanimous recommendation of the Special Committee and the unanimous approval by the Ormat board of directors.

///

34.   The ORIX Governance Agreement was signed by Defendants Angel and Blachar.

35.   Pursuant to the terms of the ORIX Governance Agreement, the Ormat Board shall be increased to nine directors, and three Ormat directors shall resign and be replaced with Orix designated directors.  The resigning and replacing directors were:

| Ormat Resigning Directors | Orix Designated Directors |
| --- | --- |
| Robert E. Joyal | Yuichi Nishigori |
| Ami Boehm | Stan Koyanagi |
| Gillon Beck | Todd Freeland |

36.   Pursuant to the terms of the ORIX Governance Agreement, each committee of the Board shall consist of three directors; two selected by Ormat and one selected by ORIX.

37.   On information and belief, although Ormat published the Commercial Cooperation Agreement, ORIX Governance Agreement, and Registration Rights Agreement with ORIX in its 8-K filed with the SEC, it did not include or attach the contemporaneous Stock Purchase Agreement and did not make the Stock Purchase Agreement available to the public or to Ormat stockholders at the same time and along with the other agreements.  This Stock Purchase Agreement was later attached as exhibit to a separate SEC filing (without the other ORIX Transaction documents.

38.   The ORIX Stock Purchase Agreement defines:

- the CEO as Angel,
- the CFO as Blachar,
- CEO shares as 400,000 shares of Ormat common stock,
- CFO shares as 62,500 shares of Ormat common stock,
- CEO consideration means an amount equal to $57.00 multiplied by the CEO shares,

- CFO consideration means an amount equal to $57.00 multiplied by the CFO shares.

39.    Pursuant to the 2017 DEF 14A, as of March 16, 2017, Angel was the beneficial owner of 150, 000 shares of Ormat common stock.  Regarding these shares, 2017 DEF 14A states: "Includes 150,000 shares of Common Stock issuable to Mr. Angel upon the exercise of options that are exercisable within 60 days of March 17, 2017.  The options granted to Mr. Angel have an exercise price of $29.52 per share of Common Stock and expire on March 31, 2020."

40.    Pursuant to the 2017 DEF 14A, as of March 16, 2017, Blachar was the beneficial owner of 62,500 shares of Ormat common stock.  Regarding these shares, 2017 DEF 14A states: "Includes 62,500 shares of Common Stock issuable to Mr. Blachar upon the exercise of options that are exercisable within 60 days of March 17, 2017. The options granted to Mr. Blachar have exercise prices that range between $20.54 and $24.57 per share of Common Stock and expire on different dates between February 9, 2019 and April 2, 2019."

41.    Section 5.2 of the ORIX Stock Purchase Agreement requires Angel and Blachar to use their "reasonable best efforts to cause the appointment…" of the ORIX designated directors.  No provision for due diligence or other consideration for Angel and/or Blachar to evaluate this designated director support was included in this agreement.

42.    The ORIX Stock Purchase Agreement was signed by Defendant Nishigori on behalf of ORIX.

43.    On May 9, 2017, Ormat filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2017 (the "1Q 2017 10-Q").  Regarding its controls and procedures, the Company stated:

///

///

**ITEM 4. CONTROLS AND PROCEDURES**

**Evaluation of disclosure controls and procedures**

Our management, with the participation of our Chief Executive Officer and Chief Financial Officer, evaluated the effectiveness of our disclosure controls and procedures to ensure that the information required to be disclosed in our filings pursuant to Rule 13a-15 under the Securities and Exchange Act of 1934, as amended, is recorded, processed, summarized and reported within the time periods specified in the Securities and Exchange Commission's rules and forms and to ensure that such information is accumulated and communicated to management, including our Chief Executive Officer and Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure. ***Based on that evaluation, as of March 31, 2017, our Chief Executive Officer and Chief Financial Officer have concluded that our disclosure controls and procedures*** (as defined in Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934, as amended) ***were effective***.

**Changes in internal controls over financial reporting**

There were no changes in our internal controls over financial reporting in the first quarter of 2017 that have materially affected or are reasonably likely to materially affect our internal controls over financial reporting.  [Emphasis added].

44.     The 1Q 2017 10-Q contained signed SOX certifications by Defendants Angel and Blachar stating that the financial information contained in the 1Q 2017 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

45.     On August 8, 2017, Ormat filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended June 30, 2017 (the "2Q 2017 10-Q").  Regarding its controls and procedures, the Company stated:

**ITEM 4. CONTROLS AND PROCEDURES**

**Evaluation of disclosure controls and procedures**

Our management, with the participation of our Chief Executive Officer and Chief Financial Officer, evaluated the effectiveness of our disclosure controls and procedures to ensure that the information required to be disclosed in our filings pursuant to Rule 13a-15 under the Securities and Exchange Act of 1934, as amended, is recorded, processed, summarized and reported within the time periods specified in the Securities and Exchange Commission's rules and forms and to ensure

that such information is accumulated and communicated to management, including our Chief Executive Officer and Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure. Based on that evaluation, as of June 30, 2017, ***our Chief Executive Officer and Chief Financial Officer have concluded that our disclosure controls and procedures*** (as defined in Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934, as amended) ***were effective***.

**Changes in internal controls over financial reporting**

There were no changes in our internal controls over financial reporting in the second quarter of 2017 that have materially affected or are reasonably likely to materially affect our internal controls over financial reporting.  [Emphasis added].

46.     The 2Q 2017 10-Q contained signed SOX certifications by Defendants Angel and Blachar stating that the financial information contained in the 2Q 2017 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

47.     On November 9, 2017 Ormat filed an amended quarterly report on Form 10-Q/A with the SEC, announcing the Company's financial and operating results for the quarter ended September 30, 2017 (the "3Q 2017 10-Q").  Regarding its controls and procedures, the Company stated:

**ITEM 4. CONTROLS AND PROCEDURES**

**Evaluation of disclosure controls and procedures**

Our management, with the participation of our Chief Executive Officer and Chief Financial Officer, evaluated the effectiveness of our disclosure controls and procedures to ensure that the information required to be disclosed in our filings pursuant to Rule 13a-15 under the Securities and Exchange Act of 1934, as amended, is recorded, processed, summarized and reported within the time periods specified in the Securities and Exchange Commission's rules and forms and to ensure that such information is accumulated and communicated to management, including our Chief Executive Officer and Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure. Based on that evaluation, as of September 30, 2016, ***our Chief Executive Officer and Chief Financial Officer have concluded that our disclosure controls and procedures*** (as defined in Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934, as amended) ***were effective***.

///

20

**Changes in internal controls over financial reporting**

There were no changes in our internal controls over financial reporting in the third quarter of 2016 that have materially affected or are reasonably likely to materially affect our internal controls over financial reporting.  [Emphasis added].

48.     The 3Q 2017 10-Q contained signed SOX certifications by Defendants Angel and Blachar stating that the financial information contained in the 3Q 2017 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

## THE TRUTH IS REVEALED

49.     On March 16, 2018, Ormat filed an annual report on Form 10-K with the SEC, announcing the Company's financial and operating results for the year ended December 31, 2017 (the "2017 10-K").  Regarding its controls and procedures, the Company stated:

**ITEM 9A. CONTROLS AND PROCEDURES**

**Disclosure Controls and Procedures**

Evaluation of disclosure controls and procedures.  Our management, including our Chief Executive Officer and Chief Financial Officer, have conducted the evaluation of our disclosure controls and procedures (as such term is defined in Rules 13a-15(e) and 15d-15(e) under the Exchange Act) required by Rules 13a-15(b) or 15d-15(b) under the Exchange Act, as amended.  ***Based on that evaluation, our management, including our Chief Executive Officer and Chief Financial Officer, concluded that our disclosure controls and procedures were not effective as of December 31, 2017 as a result of the material weakness in our internal control over financial reporting discussed below***.

**Management's Report on Internal Control over Financial Reporting**

***Our management, including our Chief Executive Officer and Chief Financial Officer, is responsible for establishing and maintaining adequate internal control over financial*** reporting as described in Rules 13a-15(f) and 15d-15(f) under the Securities Exchange Act of 1934, as amended, or the Exchange Act. Internal control over financial reporting is defined as a process designed by, or under the supervision of, the issuer's principal executive and principal financial officers, or persons performing similar functions, and effected by the issuer's board of directors, management and other personnel, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external

purposes in accordance with generally accepted accounting principles and includes those policies and procedures that: (1) Pertain to the maintenance of records that in reasonable detail accurately and fairly reflect the transactions and dispositions of the assets of the issuer, (2) Provide reasonable assurance that transactions are recorded as necessary to permit preparation of financial statements in accordance with generally accepted accounting principles, and that receipts and expenditures of the issuer are being made only in accordance with authorizations of management and directors of the issuer and (3) Provide reasonable assurance regarding prevention or timely detection of unauthorized acquisition, use or disposition of the issuer's assets that could have a material effect on the financial statements.

Because of its inherent limitations, internal control over financial reporting may not prevent or detect misstatements. Also, projections of any evaluation of effectiveness to future periods are subject to the risk that controls may become inadequate because of changes in our conditions, or that the degree of compliance with our policies or procedures may deteriorate.

*Evaluation of effectiveness of internal control over financial reporting*. ***Our management, under the supervision and participation of our Chief Executive Officer and our Chief Financial Officer, has conducted an evaluation of the effectiveness of our internal control over financial reporting as of December 31, 2017*** using criteria established in *Internal Control — Integrated Framework (2013)* issued by the COSO ***and, based on this evaluation, concluded that our internal control over financial reporting was not effective as of December 31, 2017 as a result of the material weakness in our internal control over financial reporting discussed below***. A material weakness is a deficiency, or a combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of our annual or interim financial statements will not be prevented or detected on a timely basis.

*Material weakness*. In connection with the change in our repatriation strategy and the related release of the US income tax valuation allowance in the second quarter of 2017, ***we did not perform an effective risk assessment related to our internal controls over the accounting for income taxes***. As a result, we identified a deficiency in the design of our internal control over financial reporting related to our accounting for income taxes, which affected the recording of income tax accounts by us in our interim and annual consolidated financial statements during 2017, including audit adjustments to the income tax accounts. This deficiency resulted in immaterial adjustments to income tax expense and deferred tax liabilities, but did not result in a material misstatement in our previously issued interim or annual consolidated financial statements nor does it require a restatement of or change in our consolidated financial statements for any prior interim or annual period. However, this control deficiency could result in a misstatement of the aforementioned balances and disclosures that would result in a material misstatement to the interim or annual consolidated financial statements that would not be prevented or detected. Our management has concluded that this deficiency constitutes a material weakness in our internal control over financial reporting.

22

The effectiveness of the Company's internal control over financial reporting as of December 31, 2017 has been audited by PricewaterhouseCoopers LLP, an independent registered public accounting firm, as stated in their report which appears in this Annual Report on Form 10-K. [Emphasis added].

50.   In its 2017 10-K and in response to Ormat's material weakness in its internal control over financial reporting, Ormat set forth its remediation plan as follows:

**Remediation Plan**

In response to the identified material weakness, our management, with the oversight of the Audit Committee of the Board of Directors, will update its risk assessment process related to income taxes and intends to implement additional control procedures. While certain remedial actions have been completed in the first quarter of 2018 and management has dedicated significant resources and efforts to implement a remediation plan, we continue to actively plan to implement additional control procedures. The remediation efforts, outlined below, are intended both to address the identified material weakness and to enhance our overall financial control environment. However, our management may amend this plan to include additional remedial action in light of its continuing evaluation of the identified deficiency in internal control over financial reporting.

We have:

- implemented specific enhanced controls procedures for the review, analysis and reporting of our income tax accounts, including control procedures of projections that support the deferred tax assets and liabilities;

- engaged an external tax and accounting firm to prepare and review our annual and quarterly income tax provision including to review and recommend additional control enhancements;

- recruited additional tax personnel; and

- enhanced our income tax controls with improved documentation.

We intend to:

- evaluate the need to recruit additional tax or accounting personnel during 2018; and

- continue to strengthen our income tax controls with improved documentation, communication and oversight.

We have commenced our remediation plan, with the goal of remediating this material weakness as soon as possible, subject to the conclusion by our management that our enhanced internal control over financial reporting is operating effectively following appropriate testing.

23

51.     On March 27, 2018, the Company filed its DEF 14A Definitive Proxy Statement (the "2018 DEF 14A") with the SEC, announcing its annual shareholders meeting on May 7, 2018.  The stated purpose of this meeting was to:

- elect the three director nominees named in the attached proxy statement, each for a term of three years;

- ratify the appointment of PricewaterhouseCoopers LLP as our independent registered public accounting firm for the fiscal year ending December 31, 2018;

- approve the Ormat Technologies, Inc. 2018 Incentive Compensation Plan;

- approve the compensation of our named executive officers on an advisory basis; and

- transact any other business that may properly come before the meeting.

52.     The 2018 DEF 14A included a disclosure similar to the disclosure in its 2017 10-K that its internal control over financial reporting as of December 31, 2017 was not effective and resulted in needed "immaterial adjustments".

53.     On information and belief, at the May 7, 2018 Ormat shareholders meeting, Defendants failed to clarify or in any material way change its statements regarding its 2017 financial reporting.  Further, Defendants did not disclose its planned restatement as it announced on May 16, 2018.

54.     On May 11, 2018, the Company disclosed in Form 12b-25 filed with the SEC that it was delaying the filing of its Quarterly Report for the period ended March 31, 2018 with the SEC.  The reason for this delay was stated as, "management has identified an error in the Company's financial statement presentation of deferred income tax assets and deferred income tax liabilities that affects the Company's balance sheets in previous reporting periods."  The Company further disclosed that "[t]he Company is evaluating the impact of this error on its consolidated financial statements and the extent to which the Company's annual and quarterly consolidated financial statements filed in previous periods require revision or amendment," stating in relevant part:

Ormat Technologies, Inc. (the "Company") has determined that it is not able to file its Quarterly Report on Form 10-Q for the quarter ended March 31, 2018 (the "Q1 Form 10-Q") within the prescribed time period without unreasonable effort or expense for the reasons described below. The Company's management has identified an error in the Company's financial statement presentation of deferred income tax assets and deferred income tax liabilities that affects the Company's balance sheets in previous reporting periods. Specifically, the Company netted certain deferred income tax assets and deferred income tax liabilities across different tax jurisdictions that are not permitted to be netted pursuant to United States generally accepted accounting principles. The Company is evaluating the impact of this error on its consolidated financial statements and the extent to which the Company's annual and quarterly consolidated financial statements filed in previous periods require revision or amendment.  Further, the Company is in the process of evaluating the control implications of this error as it relates to the material weakness disclosures previously made in the Annual Report on Form 10-K for the year ended December 31, 2017.

55.     On this news, Ormat's stock fell $3.58 per share, or over 6% over two consecutive trading days to close at $52. 77 per share on May 14, 2018.

56.     Then, on May 16, 2018 the Company filed a form 8-K with the SEC and revealed that "it will restate its second, third and fourth quarter 2017 financial statements and its full-year 2017 financial statements," and therefore, "investors should no longer rely upon the Company's previously issued financial statements for the periods set forth above, earnings releases for these periods, and other communications relating to these financial statements," stating in relevant part:

The decision to restate these financial statements is based on the Company's conclusion that there were errors in the income tax provision primarily relating to the Company's valuation allowance based on the Company's ability to utilize foreign tax credits in the U.S. prior to their expiration. Additionally, the Company netted certain deferred income tax assets and deferred income tax liabilities across different tax jurisdictions that are not permitted to be netted pursuant to United States generally accepted accounting principles. The restatement is expected to impact the "income tax (provision) benefit" line item in the Company's statements of operations, with associated impacts to net income and earnings per share and the "deferred income taxes" line items on its balance sheet. In connection with the restatement of the full-year 2017 financial statements, the Company will also make revisions to the same line items in certain quarterly financial statements for 2016 and its full-year 2016 and 2015 financial statements.

Although the Company cannot at this time estimate when it will complete the restatement and refile its restated financial statements and its Form 10-Q for the first quarter of 2018, it is diligently pursuing

completion of the restatement and intends to file the Form 10-Q as soon as reasonably practicable. Because the Company has not yet fully completed its review, the impact of the restatement described above is preliminary and subject to change.

As previously reported, the Company identified a material weakness in its internal control over financial reporting related to accounting for income taxes. Management, with the oversight of the Audit Committee and the Board of Directors, continues to dedicate significant resources and efforts to improve the Company's control environment and take steps to address the material weakness identified. These efforts are intended both to address the identified material weakness and to enhance the Company's overall financial control environment.

57.     On this news, Ormat's stock fell $0.67 per share from its previous closing price to close at $52.35 per share on May 16, 2018.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

58.     Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered as a direct and proximate result of the breaches of fiduciary duties, waste of corporate assets, unjust enrichment, and violations of Section 14(a) of the Securities Exchange Act of 1934.

59.     Plaintiff will adequately and fairly represent the interests of the Company and its shareholders in enforcing and prosecuting its rights and has retained counsel competent and experienced in derivative litigation.

60.     Plaintiff is a current owner of the Company stock and have continuously been an owner of Company stock during all times relevant to Defendants' wrongful course of conduct alleged herein.  Plaintiff understands his obligation to hold stock throughout the duration of this action and are prepared to do so.

61.     Because of the facts set forth throughout this Complaint, demand on the Board to institute this action is not necessary because such a demand would have been a futile and useless act.

62.     The Company Board is currently comprised of nine (9) members – Defendants Freeland, Barniv, Sharir, Falk, Granot, Koyanagi, Nishigori, Stern, and Wong.  Thus, Plaintiff is required to show that a majority of the Director Defendants,

1  *i.e.*, five (5), cannot exercise independent objective judgment about whether to bring this
2  action or whether to vigorously prosecute this action.

3      63.     The Director Defendants (or at the very least a majority of them) cannot
4  exercise independent objective judgment about whether to bring this action or whether
5  to vigorously prosecute this action.  For the reasons that follow, and for reasons detailed
6  elsewhere in this complaint, Plaintiff has not made (and should be excused from
7  making) a pre-filing demand on the Board to initiate this action because making a
8  demand would be a futile and useless act.

9         **The Director Defendants Are Not Independent or Disinterested**
10  **Defendant Falk**

11     64.     Defendant Falk is not disinterested or independent, and therefore, is
12  incapable of considering demand because he was chairman of Ormat's Audit Committee
13  as of the date of the announced restatement, and which committee failed in its financial
14  reporting and internal controls oversight responsibilities.  Falk was also a member of
15  Ormat's Special Committee which was responsible for evaluating and negotiating the
16  ORIX Transaction on behalf of the Company.  On information and belief, Falk and the
17  Special Committee did not meet its responsibilities as it relates to the contemporaneous
18  Stock Purchase Agreement (where ORIX purchased Ormat stock from Defendants
19  Angel, Blachar, and others) which resulted in ORIX acquiring almost 11 million shares
20  and approximately 22% of Ormat's outstanding common stock.

21  **Defendant Granot**

22     65.     Defendant Granot is not disinterested or independent, and therefore, is
23  incapable of considering demand because he was a member of Ormat's Audit
24  Committee as of the date of the announced restatement, and which committee failed in
25  its financial reporting and internal controls oversight responsibilities.  Granot was also a
26  member of Ormat's Special Committee which was responsible for evaluating and
27  negotiating the Orix Transaction on behalf of the Company.  On information and belief,
28  Granot and the Special Committee did not meet its responsibilities as it relates to the

contemporaneous Stock Purchase Agreement (where ORIX purchased Ormat stock from Defendants Angel, Blachar, and others) which resulted in ORIX acquiring almost 11 million shares and approximately 22% of Ormat's outstanding common stock.

**Defendant Wong**

66.     Defendant Wong is not disinterested or independent, and therefore, is incapable of considering demand because he was a member of Ormat's Audit Committee as of the date of the announced restatement, and which committee failed in its financial reporting and internal controls oversight responsibilities.

**Defendant Stern**

67.     Defendant Stern is not disinterested or independent, and therefore, is incapable of considering demand.  Stern was a member of Ormat's Special Committee which was responsible for evaluating and negotiating the Orix Transaction on behalf of the Company.  On information and belief, Stern and the Special Committee did not meet its responsibilities as it relates to the contemporaneous Stock Purchase Agreement (where ORIX purchased Ormat stock from Defendants Angel, Blachar, and others) which resulted in ORIX acquiring almost 11 million shares and approximately 22% of Ormat's outstanding common stock.

**Defendant Koyanagi**

68.     Defendant Koyanagi is not disinterested or independent, and therefore, is incapable of considering demand.  As part of the Orix Transaction, Koyanagi was designated as an Ormat Director by ORIX.  Koyanagi is also a director of Orix, and as a result of the ORIX Transaction, Orix acquired almost 11 million shares and approximately 22% of Ormat's outstanding common stock.  Koyanagi's competing fiduciary obligations between Ormat and ORIX renders him incapable of independence or disinterest.

**Defendant Nishigori**

69.     Defendant Nishigori is not disinterested or independent, and therefore, is incapable of considering demand.  As part of the ORIX Transaction, Nishigori was

designated as an Ormat Director by ORIX. Nishigori is also a director of ORIX, and as a result of the ORIX transaction, Orix acquired almost 11 million shares and approximately 22% of Ormat's outstanding common stock. Nishigori's competing fiduciary obligations between Ormat and ORIX renders him incapable of independence or disinterest.

**Defendant Freeland**

70.     Defendant Freeland is not disinterested or independent, and therefore, is incapable of considering demand. As part of the ORIX Transaction, Freeland was designated as an Ormat Director by ORIX. Freeland also serves as Co-Head of Energy and Eco Services Business Headquarters and CEO of Energy and Eco Services Europe at Orix. As a result of the Orix Transaction, ORIX acquired almost 11 million shares and approximately 22% of Ormat's outstanding common stock. Freeland's competing fiduciary obligations between Ormat and ORIX renders him incapable of independence or disinterest.

**Defendant Barniv**

71.     Defendant Barniv was one of three directors up for re-election at the Ormat 2018 shareholder's meeting. In an apparent effort to retain her seat on the Ormat Board, Barniv failed to promptly notify Ormat shareholders of its clearly known need to restate its financials as described herein, prior to voting at the 2018 Ormat shareholders meeting.

**Additional Information**

72.     In its 2017 10-K, the Company announced that its internal controls were ineffective and that it had established a remediation plan. Upon information and belief, at the 2018 Ormat annual shareholders meeting held on May 7, 2018, the Director Defendants failed to provide any status to the shareholders regarding the status of its internal controls, any findings from its alleged due diligence into these issues, or its remediation plan. Notwithstanding these omissions, Ormat and the Director Defendants sought and received shareholder votes on various Ormat matters, including election of

1  directors.  Only nine (9) days after this Ormat shareholders meeting, the Company
2  announced the need to restate its financials as described herein.

### FIRST CAUSE OF ACTION

### <u>Against Defendants for Breach of Fiduciary Duties</u>

5  73.   Plaintiff incorporates by reference and re-alleges each and every allegation
6  contained above, as though fully set forth herein.

7  74.   Defendants owe the Company fiduciary obligations.  By reason of their
8  fiduciary relationships, Defendants owed and owe the Company the highest obligation
9  of good faith, fair dealing, loyalty, and due care.

10  75.   Defendants violated and breached their fiduciary duties of care, loyalty,
11  reasonable inquiry, and good faith.

12  76.   Defendants engaged in a sustained and systematic failure to properly
13  exercise their fiduciary duties.  Among other things, Defendants breached their fiduciary
14  duties of loyalty and good faith by allowing the Company to improperly misrepresent
15  the Company's publicly reported financials.  These actions could not have been a good
16  faith exercise of prudent business judgment to protect and promote the Company's
17  corporate interests.

18  77.   As a direct and proximate result of Defendants' failure to perform their
19  fiduciary obligations, the Company has sustained significant damages.  As a result of the
20  misconduct alleged herein, Defendants are liable to the Company.

21  78.   As a direct and proximate result of Defendants' breach of their fiduciary
22  duties, the Company has suffered damage, not only monetarily, but also to its corporate
23  image and goodwill.  Such damage includes, among other things, costs associated with
24  defending securities lawsuits, severe damage to the share price of the Company,
25  resulting in an increased cost of capital, the waste of corporate assets, and reputational
26  harm.

27  ///
28  ///

**SECOND CAUSE OF ACTION**

**Against Defendants For Unjust Enrichment**

79.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

80.     By their wrongful acts and omissions, Defendants were unjustly enriched at the expense of and to the detriment of Ormat.

81.     Defendants were unjustly enriched as a result of the compensation they received while breaching their fiduciary duties owed to Ormat.

82.     Plaintiff, as a shareholder and a representative of Ormat, seek restitution from Defendants and seeks an order from this Court disgorging all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct and fiduciary breaches.

83.     Plaintiff, on behalf of Ormat, has no adequate remedy at law.

**THIRD CAUSE OF ACTION**

**Against Defendants For Waste of Corporate Assets**

84.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

85.     The wrongful conduct alleged regarding the issuance of false and misleading statements was continuous, connected, and on-going throughout the Relevant Period.  It resulted in continuous, connected, and ongoing harm to the Company.

86.     As a result of the misconduct described above, Defendants wasted corporate assets by, inter alia: (i) paying excessive compensation, bonuses, and termination payments to certain of its executive officers; (ii) awarding self-interested stock options to certain officers and directors; and (iii) incurring potentially millions of dollars of legal liability and/or legal costs to defend Defendants' unlawful actions.

87.     As a result of the waste of corporate assets, Defendants are liable to the Company.

88.     Plaintiff, on behalf of Ormat, has no adequate remedy at law.

# FOURTH CAUSE OF ACTION

### Against Director Defendants for Violations of
### Section 14(a) of the Securities Exchange Act of 1934

89.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

90.     Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), provides that "[i]t shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 78l]."

91.     Rule 14a-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

92.     Under the direction and watch of the Director Defendants, the 2018 Proxy Statement failed to disclose or provide: (1) information relating to internal control deficiencies and planned restatements of its second, third and fourth quarter 2017 financial statements and its full-year 2017 financial statements, which it revealed nine (9) days after this shareholders meeting, and (2) that Angel and Blachar were contractually obligated to promote the Orix designated directors for Ormat as part of their Stock Purchase Agreement.

93.     In the exercise of reasonable care, the Director Defendants should have known that by misrepresenting or failing to disclose the foregoing material facts, the statements contained in the 2018 Proxy Statement were materially false and misleading.

The misrepresentations and omissions were material to Plaintiff in voting on the matters set forth for shareholder determination in the 2018 Proxy Statement, including election of directors, approval of executive compensation, and appointment of an independent auditor.

94.     The Company was damaged as a result of the Director Defendants' material misrepresentations and omissions in the 2018 Proxy Statement.

95.     Plaintiff, on behalf of Ormat, has no adequate remedy at law.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment as follows:

A.     Determining that this action is a proper derivative action maintainable under law, and that demand is excused;

B.     Awarding, against all the Director Defendants and in favor of the Company, the damages sustained by the Company as a result of Defendants' breaches of their fiduciary duties;

C.     Directing the Company to take all necessary actions to reform and improve its corporate governance and internal procedures, to comply with the Company's existing governance obligations and all applicable laws and to protect the Company and its investors from a recurrence of the damaging events described herein;

D.     Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.     Granting such other and further relief as the Court deems just and proper.

///
///
///
///
///
///
///

1

## **JURY DEMAND**

2  Plaintiff demands a trial by jury on all issues so triable.

3  Dated this 13th day of September 2018.

4  Respectfully submitted,

5  **MATTHEW L. SHARP, LTD.**

6

7  By:___/s/ Matthew L. Sharp_____

8  Matthew L. Sharp
432 Ridge St.
Reno, NV 89501

9  Phone: (775) 324-1500
Fax:  (775) 284-0675

10  Email: matt@mattsharplaw.com

11  Thomas J. McKenna
*Pro Hac Vice Application to be filed*

12  **GAINEY McKENNA & EGESTON**
440 Park Avenue South, 5th Floor

13  New York, New York 10016
Phone: (212) 983-1300

14  Fax: (212) 983-0383
Email: tjmckenna@gme-law.com

15  Email: gegleston@gme-law.com
Email: rschupler@gme-law.com

16  *Counsel for Plaintiff*

17

18

19

20

21

22

23

24

25

26

27

28

34

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **VERIFICATION**

I, Melvyn Klein, declare that I have reviewed the Verified Shareholder Derivative Complaint ("Complaint") prepared on behalf of Ormat Technologies, Inc. and authorize its filing.  I have reviewed the allegations made in the Complaint, and to those allegations of which I have personal knowledge, I believe those allegations to be true.  As to those allegations of which I do not have personal knowledge, I rely on my counsel and their investigation and for that reason believe them to be true.  I further declare that I am a current holder, and have been a holder, of Ormat Technologies, Inc. common stock at all relevant times.


*/s/ Melvyn Klein*
MELVYN KLEIN

1