1   Matthew L. Sharp. Esq.
    Nevada Bar No. 4746
2   **MATTHEW L. SHARP, LTD.**
    432 Ridge St.
3   Reno, NV 89501
    (775) 324-1500
4   matt@mattsharplaw.com
    *Attorneys for Plaintiff*
5

6   [**Additional Counsel Listed Below**]

7
                    **UNITED STATES DISTRICT COURT**
8
                         **DISTRICT OF NEVADA**
9

10
    IN RE ORMAT TECHNOLOGIES, INC.        Case No.: 3:18-cv-00439-RCJ-WGC
11  DERIVATIVE LITIGATION,

12                                        **PLAINTIFF'S MOTION FOR FINAL
    THIS DOCUMENT RELATES TO:             APPROVAL OF SETTLEMENT AND
13  All Actions                          FOR AN AWARD OF ATTORNEYS'
                                          FEES AND REIMBURSEMENT OF
14                                        EXPENSES**

15

16  **TO: ALL PARTIES AND THEIR COUNSEL OF RECORD**

17          PLEASE TAKE NOTICE that Plaintiff Melvyn Klein ("Plaintiff") hereby moves in the above

18  captioned consolidated shareholder derivative action (the "Motion"), pursuant to Rule 23.1 of the

19  Federal Rules of Civil Procedure ("Rule 23.1") and Local Rule 7 of this District, for entry of an order

20  granting final approval of the proposed settlement set forth in the Stipulation of Settlement (the

21  "Stipulation")[1] entered between and among the Settling Parties to the instant action.

22          The Motion seeks, *inter alia,* an order:[2] (a) granting final approval of the settlement embodied

23  within the Stipulation (the "Settlement"); (b) granting the proposed Fee and Expense Award; and (c)

24  entering the proposed final Judgment which is attached as Exhibit C to the Stipulation.

25

26  ──────────────────
    [1] Unless otherwise defined, capitalized terms shall have the same meaning as set forth in the
27  Stipulation of Settlement ("Stipulation" or "Stip.") attached as Exhibit ("Ex.") 1 to the Declaration
    of Shannon L. Hopkins in Support of Plaintiff's Unopposed Motion for Preliminary Approval of
28  Proposed Settlement filed on October 12, 2020. ECF No. 55-1.

    [2] The proposed final Approval Order is attached as Exhibit B to the Stipulation.

1    This Motion is brought pursuant to the terms of the Stipulation, and accordingly counsel for
2    all Settling Parties have conferred concerning Plaintiff's filing of this Motion and Defendants have
3    no opposition to the relief requested herein.

**MEMORANDUM OF POINTS AND AUTHORITIES**

5    Pursuant to Rule 23.1, Plaintiff Melvyn Klein ("Plaintiff"), by and through his undersigned
6    counsel, hereby submits this Memorandum of Points and Authorities in Support of Plaintiff's Motion
7    for Final Approval of the Settlement of the above-captioned consolidated derivative action (the
8    "Consolidated Derivative Action") brought on behalf of Ormat Technologies, Inc. ("Ormat" or the
9    "Company") and for an award of attorneys' fees and expenses.

**I.    INTRODUCTION**

11    Plaintiff is pleased to present the Settlement for this Court's final approval, which is the
12    culmination of almost two (2) years of litigation and arm's-length negotiations between experienced
13    counsel for the Settling Parties, who comprehensively understood and debated the merits of the
14    Consolidated Derivative Action. These negotiations were overseen by a mediator experienced in
15    complex stockholder litigation, JAMS mediator Jed D. Melnick (the "Mediator"). As a result of the
16    filing, prosecution, and Settlement of the Consolidated Derivative Action, Ormat and its stockholders
17    will receive the substantial benefit of strengthened governance and internal controls. Pursuant to the
18    Settlement, Ormat agreed to adopt and/or enact significant corporate governance reforms (the
19    "Reforms") designed to address the wrongdoing alleged in the Consolidated Derivative Action.
20    Ormat acknowledges and agrees that the Reforms confer substantial benefits upon Ormat and its
21    stockholders, and further acknowledges that the commencement, prosecution, and settlement of the
22    Consolidated Derivative Action were material and substantial factors for the Company's decision to
23    adopt, implement, and maintain the corporate Reforms. Stip., § 2.B.

24    After agreeing to the material terms of the Settlement, counsel for the Settling Parties
25    negotiated the amount of attorneys' fees and expenses that Defendants' insurer would pay to
26    Plaintiff's Counsel. As a result of those negotiations, and in recognition of the substantial benefits
27    conferred by Plaintiff's Counsel on the Company, the Company's insurer, on behalf of Defendants,
28    has agreed to pay Plaintiff's Counsel $399,000 in attorneys' fees and expenses (the "Fee and Expense

Award"). This amount was negotiated by the Settling Parties at arm's-length, with the aid of the Mediator, separate and apart from the material terms of the Settlement and is fair and reasonable in light of the substantial benefits achieved by the Settlement.

The claims at issue in the Consolidated Derivative Action are complex, and Plaintiff faced a number of legal and practical risks. Even if Plaintiff survived the numerous procedural complexities inherent in shareholder derivative litigation, he would still be faced with the significant challenges of proving the elements of each of his claims and overcoming Defendants' affirmative defenses. Plaintiff's Counsel only advised Plaintiff to enter into the Stipulation after approximately two (2) years of investigation and litigation. These efforts included, *inter alia*: (1) inspecting, analyzing, and reviewing Ormat's public filings with the U.S. Securities and Exchange Commission ("SEC"), press releases, announcements, transcripts of investor conference calls, and news articles; (2) drafting and filing the various complaints in the Consolidated Derivative Action; (3) researching the applicable law with respect to the claims asserted in the Consolidated Derivative Action and the potential defenses thereto; and (4) participating in extensive, in-person settlement discussions with Defendants' Counsel and the Mediator.

On November 24, 2020, the Court entered an Order preliminarily approving the Settlement (the "Preliminary Approval Order") and directing that a final settlement hearing be held on March 22, 2021, at 10:00 a.m. (the "Settlement Hearing") to determine the fairness, reasonableness, and adequacy of the Settlement. Pursuant to the terms of the Preliminary Approval Order, the Notice to Current Ormat Shareholders (the "Notice") was filed on a Form 8-K with the SEC, as well as published on the Company's "Investor Relations" page on December 2, 2020. The Notice contained a detailed description of the history of the Consolidated Derivative Action and the Settlement, the claims that will be released if the Settlement is finally approved, and the Fee and Expense Award sought by Plaintiff's Counsel. The Notice further disclosed the time and location of the Settlement Hearing and advised current Ormat shareholders ("Current Ormat Shareholders") of the procedures for objecting to the proposed Settlement and/or Fee and Expense Award. As of the time of this filing, and despite the fact that Ormat has thousands of stockholders, Plaintiff's Counsel are unaware of any objections to the Settlement or the Fee and Expense Award, which is strong evidence that they are

1   (each, respectively) fair, reasonable, and adequate. *See* Declaration of Shannon L. Hopkins in Support

2   of Motion for Final Approval of Settlement and for an Award of Attorneys' Fees and Reimbursement

3   of Expenses ("Hopkins Decl.") at ¶¶ 11, 31, filed concurrently herewith.

4           The Ninth Circuit warns that "the odds of winning [a] derivative lawsuit [are] extremely

5   small" because "derivative lawsuits are rarely successful." *In re Pacific Enters. Sec. Litig.*, 47 F.3d

6   373, 378 (9th Cir. 1995). This Court has recognized the difficulties of prosecuting a shareholder

7   derivative action when approving a settlement as final, characterizing "such litigation [as] notoriously

8   difficult and unpredictable." *HPEV, Inc. v. Spirit Bear Ltd.*, No. 2:13-cv-01548-JAD-GWF, 2016

9   U.S. Dist. LEXIS 58599, at *6 (D. Nev. Apr. 28, 2016) (quotation omitted). Despite these obstacles,

10  Plaintiff produced an excellent result for Ormat and Current Ormat Shareholders in light of the

11  various challenges, substantial risks, expenses, and uncertainties that Plaintiff would undoubtedly

12  face through continued litigation. In sum, the Settlement represents an outstanding resolution for

13  Ormat in a case of substantial complexity and costs and fully justifies this Court's final approval of

14  the Settlement as fair, reasonable, and adequate.

15  **II.      FACTUAL AND PROCEDURAL BACKGROUND**

16          On September 11, 2018, Plaintiff Klein filed a verified shareholder derivative complaint in

17  this Court (the "*Klein* Action"). Hopkins Decl., ¶ 12. On October 22, 2018, stockholder Gary

18  Matthew, filed a related verified stockholder derivative complaint in this Court (the "*Matthew*

19  Action"). *Id.* The *Klein* Action and the *Matthew* Action were then consolidated by order of this Court

20  on January 24, 2019, with plaintiffs Klein and Matthew appointed as Lead Plaintiffs,[3] and Gainey

21  McKenna & Egleston and Levi & Korsinsky, LLP appointed as Co-Lead Counsel in the Consolidated

22  Derivative Action (ECF No. 17). *Id.*

23          The Consolidated Derivative Action is brought on behalf of Ormat against certain members

24  of its Board of Directors (the "Board") and alleges that the Director Defendants made crucial errors

25  in calculating the income tax provision related to Ormat's valuation allowance. *Id.*, ¶ 13. In addition,

26  the Director Defendants failed to maintain adequate internal controls over Ormat's deferred income

27

28  ───────────────
[3] Plaintiff Matthew no longer has standing to pursue a derivative claim on behalf of Ormat because he no longer owns any shares of Ormat.

tax assets and deferred income tax liabilities and improperly netted certain amounts according to generally accepted accounting principles ("GAAP"). *Id.* As a result of the foregoing, the Company's financial statements, as well as the Director Defendants' statements about Ormat's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis. *Id.* The Consolidated Derivative Action alleges that once the truth was revealed and Ormat was forced to restate its financial statements, its stock price and market capitalization materially declined causing the Company to face significant liability in actions alleging violations of the federal securities laws. *Id.* The Consolidated Derivative Action thus alleges breach of fiduciary duties, abuse of control, unjust enrichment, and violations of Section 14(a) of the Securities Exchange Act of 1934 by the Director Defendants between August 8, 2017 and May 15, 2018. *Id.*

During the course of this litigation, this Court stayed all deadlines and hearings in the Consolidated Derivative Action pending entry of an order on the motion to dismiss in the related securities class action captioned *Mac Costas, et al v. Ormat Technologies Inc., et al.* ("Securities Class Action"), also filed in the United States District Court for the District of Nevada (No. 3:18-cv-00271). Hopkins Decl., ¶ 14. On December 6, 2019, the Court issued an order in the Securities Class Action denying the defendants' motion to dismiss (ECF No. 76).[4] *Id.*, 15. Following that decision, the Settling Parties agreed to participate in a mediation in an effort to reach an early resolution of the Consolidated Derivative Action. *Id.* The Settling Parties then filed a stipulation to extend the stay in the Consolidated Derivative Action to allow time to explore a consensual resolution of the litigation via mediation, which the Court granted. ECF No. 41. Prior to the commencement of mediation, on February 19, 2020, Plaintiff sent a demand to counsel for all defendants requesting that Ormat implement certain corporate governance changes in resolution of the claims asserted in the Consolidated Derivative Action. *Id.*, 16.

On March 11, 2020, the Settling Parties participated in a full day in-person mediation before the Mediator in New York, New York but were unable to reach an agreement to settle the matter.

---

[4] On January 11, 2021, a final approval hearing was held in the Securities Class Action and on January 21, 2021, this Court entered an Order and Final Judgment certifying the class and finally approving the settlement in that case, including attorneys' fees and expenses, pursuant to which the defendants will pay $3.75 million to the settlement class.

1    Hopkins Decl., ¶ 17. Thereafter, the Settling Parties continued to negotiate and on April 23, 2020,

2    after extensive post-mediation arm's length negotiations with the aid of the Mediator, the Settling

3    Parties reached an agreement on the corporate governance policies to be implemented by Settling

4    Defendants to resolve the Consolidated Derivative Action. *Id.*, ¶¶ 18-19. Those corporate governance

5    policies are set forth in the Settlement Term Sheet annexed to the Stipulation as Exhibit A. *Id.*, ¶ 19.

6    Following this agreement, the Settling Parties, with the aid of the Mediator, negotiated the amount

7    of the Fee and Expense Award to be paid to Plaintiff's Counsel for the benefits they achieved on

8    behalf of Ormat and its stockholders. *Id.*, ¶ 20. The fee and expense negotiations continued for several

9    months with much difficulty, finally leading the Mediator to make a double-blind proposal to the

10   Settling Parties in an effort to break the impasse. *Id.*, ¶¶ 20-21. On August 13, 2020, the Settling

11   Parties accepted the Mediator's proposal and agreed upon a proposed Fee and Expense Award of

12   $399,000. *Id.*, ¶21 The Settling Parties then documented the terms of the Settlement in the Stipulation.

13   *Id.*, ¶ 22.

14   **III.    SETTLEMENT TERMS**

15           The Settlement is comprised of numerous corporate governance reforms to be implemented

16   by Ormat, specifically designed to address the wrongdoing alleged in the Consolidated Derivative

17   Complaint. The Reforms confer the benefit of substantial, immediate, and lasting corporate

18   governance enhancements, including, *inter alia*:  (i) Ormat agreed to engage Ernst & Young to assist

19   with strengthening its internal tax reporting controls, including implementing control procedures for

20   projections that support deferred tax assets and liabilities; (ii) updates to the current whistleblower

21   hotline which will now allow accounting and auditing matters to be reported via the hotline; (iii) a

22   claw back policy triggered when the Company is required under GAAP to prepare an accounting

23   restatement due to material non-compliance with a financial reporting requirement or various forms

24   of executive officer misconduct leading to direct financial harm to the Company, among others; (iv)

25   a formal written policy regarding related party transactions; and (v) material changes to Ormat's

26   Company policies including the Code of Conduct, Code of Ethics for Senior Executives, and

27   Corporate Governance Guidelines. Stip., Ex. A. Taken together, the agreed-to Reforms will enhance

28

stockholder value by improving decision-making, communications, and Board oversight of core operations, and enhancing investor confidence in the Company. *See* Hopkins Decl., ¶ 23.

## IV. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE FINALLY APPROVED BY THE COURT

### A. Standard of Review

Rule 23.1 requires court approval of the settlement or dismissal of a shareholder derivative action. Fed. R. Civ. P. 23.1; *see also Pac. Enters. Sec. Litig.*, 47 F.3d at 377. When reviewing a proposed settlement, the court should evaluate the facts and circumstances that bear on the reasonableness of the proposal. *Id*. While the district court must exercise "sound discretion" in evaluating a settlement, in exercising its discretion "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Settlements are presumptively fair and should be approved when, as here, they are negotiated at "arms' length" by experienced counsel. *See, e.g.*, *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006).

The Court is expected to consider the nature of the claims, the possible defenses to the claims, the legal and factual obstacles to be faced by the plaintiffs at trial, and the delay, expense, and complexity of continuing litigation. *In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 517 (N.D. Cal. 2020). In this context, the Ninth Circuit has stated:

> The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

///

///

*Officers for Justice*, 688 F.2d at 625.[5] *See also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (listing the factors to be balanced when determining if a settlement is fair, reasonable, and adequate as "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; . . . the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; . . . and the reaction . . . to the proposed settlement).

A settlement represents an exercise of judgment by the negotiating parties; therefore, the judge is not meant to rewrite the settlement agreement reached by the parties or to try the case by resolving issues intentionally left unresolved. *Officers for Justice*, 688 F.2d at 625.[6] Here, the Settling Parties have thoroughly investigated the factual background of the Consolidated Derivative Action, advanced their respective views of the strengths and weaknesses of the Consolidated Derivative Action, and negotiated at arm's-length and in good faith to arrive at a Settlement whereby Plaintiff has obtained valuable benefits for Ormat and Current Ormat Shareholders, thus the Settlement should be approved. *See Wells Fargo*, 445 F. Supp. 3d at 517. Here, the relevant factors established in *Officers for Justice* and *Mego* strongly support final approval of the proposed settlement.

## B.    Factors Supporting the Settlement

Generally, Courts will consider the strength of a plaintiff's case together with the risk, expense, complexity, and likely duration of further litigation, as the one factor is inherently tied to the other. *See, e.g.*, *Mego*, 213 F.3d at 458-59; *Hayes v. MagnaChip Semiconductor Corp.*, No. 14-cv-01160-JST, 2016 U.S. Dist. LEXIS 162120, at *16 (N.D. Cal. Nov. 21, 2016) (approving the final settlement). Where "there are significant barriers plaintiffs must overcome in making their case,"

---

[5] The factors used in class action settlements are universally applied to shareholder derivative settlements with the exception of considering the risk of maintaining class action status through trial, which is inapplicable and therefore excluded from analysis here. *See, e.g.*, *In re MRV Commc'ns, Inc. Derivative Litig.*, No. CV 08-03800 GAF (MANx), 2013 U.S. Dist. LEXIS 86295, at *8 (C.D. Cal. June 6, 2013); *see also In re Metro. Life Derivative Litig.*, 935 F. Supp. 286, 291 (S.D.N.Y. 1996).

[6] *Accord Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 804 (3d Cir. 1974), *cert. denied*, 419 U.S. 900 (1974); *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 124 (8th Cir. 1975), *cert. denied*, 423 U.S. 864 (1975). *See also Ryan ex rel. Maxim Integrated Prods. v. Gifford*, C.A. No. 2213-CC, 2009 Del. Ch. LEXIS 1, at *18 (Del. Ch. Jan. 2, 2009) (stating that "a settlement is not a rehearsal of a trial").

final settlement approval is considered appropriate. *Id.* There is no easy formula for determining what the potential outcome of litigation might be, instead, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice*, 688 F.2d at 625 (internal quotation marks omitted).

Here, application of the foregoing factors strongly supports final approval of the Settlement. The Reforms are demonstrably valuable[7] and will substantially aid Ormat in preventing the recurrence of the sort of events that led to the initiation of the Consolidated Derivative Action. Indeed, the Settlement, which provides for significant corporate governance reforms for the Company directly tailored to preventing further instances of the alleged wrongdoing, more than fairly, reasonably, and adequately resolves Plaintiff's claims. In light of the substantial challenges that continued litigation of the Consolidated Derivative Action would present, Plaintiff respectfully submits that the Settlement represents an excellent result for Ormat and Current Ormat Shareholders.

### 1.     The Risks of Establishing Liability

In evaluating the settlement of a shareholder action, courts have long recognized that such litigation "is notably difficult and notoriously uncertain," *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973), and that compromise is particularly appropriate, *Nelson v. Bennett*, 662 F. Supp. 1324, 1334 (E.D. Cal. 1987). While Plaintiff continues to believe his claims have merit, he also recognizes that ultimately establishing the Director Defendants' liability would have been difficult.

Complex shareholder litigation is always uncertain, and the Consolidated Derivative Action was no different. To recover on the Company's claims at trial, because Plaintiff did not issue a pre-suit demand on the Board to commence the Consolidated Derivative Action, Plaintiff would have had to demonstrate that making a pre-suit demand on the Board was "futile" and therefore excused as a matter of law, thus leaving an open question as to whether Plaintiff would have standing to bring

---

[7] There is little doubt that well-governed companies with truly engaged boards of directors tend to outperform those not perceived to have these qualities. A 2003 study by Gompers, Ishii and Metrick of over 1,500 large companies in the 1990s concluded that stockholders of companies with the "strongest" corporate governance mechanisms produced "abnormal" returns 8.5% higher than less well-governed companies. Paul A. Gompers, Joy L. Ishii, & Andrew Metrick, *Corporate Governance and Equity Prices*, Quart. J. of Economics 118 (2003).

1   claims on the Company's behalf. *See, e.g.*, *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984).[8] Establishing

2   demand futility is an uncertain proposition. *Wells Fargo*, 445 F. Supp. 3d at 524 (stating that even

3   though a significant number of government investigations and settlements "undoubtedly made

4   plaintiffs' task easier," it was "hardly a foregone conclusion" that plaintiffs' demand futility argument

5   would be successful); *Kamen v. Kemper Fin. Servs. Inc.*, 500 U.S. 90, 96 (1991) (demand futility

6   requirement is satisfied only under "'extraordinary conditions'"). Indeed, as Plaintiff's Counsel can

7   attest through their own substantial experience in this area of the law, the pre-suit demand

8   requirement is no empty procedural test.

9       Even assuming Plaintiff had adequately alleged demand futility, he still would have had to

10  overcome the protections afforded the Board under the "business judgment rule." The business

11  judgment rule generally affords a strong presumption that, in making a disinterested business

12  decision, the directors acted on an informed basis, in good faith, and with the honest belief that the

13  action taken was in the best interests of the corporation. *In re Walt Disney Co. Derivative Litig.*, 907

14  A.2d 693, 746-47 (Del. Ch. 2005), *aff'd*, 906 A.2d 27 (Del. 2006); *Aronson*, 473 A.2d at 812.

15  Although Plaintiff believed in his arguments against the protections afforded by the rule with respect

16  to the acts challenged in the Consolidated Derivative Action, the prospect that Defendants could have

17  been shielded by this protective umbrella made establishing liability in the Consolidated Derivative

18  Action uncertain. Accordingly, Plaintiff could not disregard the risks of further litigation and the

19  costs associated therewith, especially in light of the substantial benefits achieved by the Settlement.

20      **2.      Complexity, Expense, Risk, and Duration of Further Litigation**

21      Courts have long recognized the difficulty and uncertainty in shareholder derivative litigation.

22  *See, e.g.*, *Pac. Enters.*, 47 F.3d at 378 ("the odds of winning [a] derivative lawsuit [are] extremely

23  small"). Thus, when evaluating the settlement in a shareholder action, courts have found that

24  compromise is particularly appropriate. *Wells Fargo*, 445 F. Supp. 3d at 517. Indeed, as the Delaware

25  Court of Chancery has noted, a derivative breach of oversight claim such as the one brought by

26

27
_____

28  [8] The Nevada Supreme Court looks to Delaware law in the shareholder derivative context. *Shoen v. SAC Holding Corp.*, 137 P.3d 1171, 1184 (Nev. 2006). Accordingly, Plaintiff relies upon Nevada, Delaware, and federal law herein.

Plaintiff here, "is possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996). Accordingly, although Plaintiff believes his claims have merit, he also understands the difficulty that establishing the Director Defendants' liability would have posed.

Even if Plaintiff defeated the initial motion to dismiss on demand futility grounds, litigation would be extremely complex, costly, and of substantial duration. Document discovery would need to be conducted, depositions taken, experts designated, and expert discovery conducted. Motions for summary judgment would have to be briefed and argued and a trial would have to be held. Plaintiff and Plaintiff's Counsel anticipated that trial of the Consolidated Derivative Action would have taken, at minimum, several weeks, though likely much longer. The expense of such a trial and the use of both judicial resources and the resources of the parties would have been substantial. Further, submitting a matter to a jury is always, at best, an uncertain proposition. *See Santos v. Camacho*, No. 04-00006, 2008 U.S. Dist. LEXIS 35991, at *40 (D. Guam Apr. 23, 2008) ("When weighed against other important concerns such as the degree of risk involved in complete litigation and, in the case of the Class, the desire for speedy and meaningful recovery, it is not difficult to understand that parties may forego litigation in favor of recovery through settlement."). The considerable expense of further litigation, with the concurrent risk of no recovery in the Consolidated Derivative Action, provides further support for the Settlement.

Additionally, given the nature of the Consolidated Derivative Action, it is likely that any judgment in favor of Plaintiff would have been the subject of extensive post-trial motions and appeals, further prolonging the Consolidated Derivative Action and adding a considerable risk factor. Thus, the Settlement, providing immediate benefits to Ormat, was advantageous to the Company. *See, e.g.*, *Barnes v. Equinox Grp., Inc.*, No. C 10-3586 LB, 2013 U.S. Dist. LEXIS 109088, at *8 (N.D. Cal. Aug. 2, 2013) ("Given the risk of protracted appeals, this factor favors settlement.").

Plaintiff weighed each of these risks against the immediate benefits the Settlement will provide to the Company and to Current Ormat Shareholders. These risks presented the possibility not only that the prosecution of the Consolidated Derivative Action could be unsuccessful, but that prosecution of the Consolidated Derivative Action through extensive depositions and trial could be

potentially detrimental to the Company. *See, e.g.*, *Ryan*, 2009 Del. Ch. LEXIS 1, at *30 (noting that savings to the nominal defendant corporation in legal and other professional fees that would have been incurred but for the settlement "are properly considered by the Court when deciding whether a settlement is fair, reasonable, and adequate").[9] In light of the complexity, length, and uncertainty of the continued prosecution of the Consolidated Derivative Action, and the substantial benefits achieved by the Settlement, Plaintiff respectfully submits that the Settlement is fair, reasonable, and adequate, and should be finally approved.

### 3.    The Substantial Benefits Conferred on the Company

The "principal factor" in determining whether to approve the settlement of a shareholder derivative action "is the benefit to [the company] as compared to the risks" of continued litigation. *In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL), 2008 U.S. Dist. LEXIS 108195, at *8 (N.D. Cal. Nov. 5, 2008). "[S]trong corporate governance is fundamental to the economic well-being and success of a corporation." *In re NVIDIA Corp. Derivative Litig.*, No. C-06-06110-SBA (JCS), 2008 U.S. Dist. LEXIS 117351, at *10 (N.D. Cal. Dec. 22, 2008). Accordingly, courts have long "'recognized that corporate governance reforms such as those achieved here provide valuable benefits for public companies.'"). *Id.*; *see also Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 395 (1970) ("[A] corporation may receive a 'substantial benefit' from a derivative suit . . . regardless of whether the benefit is pecuniary in nature."); *Maher v. Zapata Corp.*, 714 F.2d 436, 461 (5th Cir. 1983) ("[T]he effects of the suit on the functioning of the corporation may have a substantially greater economic impact on it, both long- and short-term, than the dollar amount of any likely judgment in its favor."). Courts approve settlements supported by consideration in the form of corporate governance reforms "specifically designed to minimize the probability of violations of fiduciary duties and federal securities laws[.]" *Cohn v. Nelson*, 375 F. Supp. 2d 844, 853 (E.D. Mo. 2005). Among other benefits, such reforms make it "far less likely [that the corporation will] become subject to long and costly securities litigation in the future, as well as prosecution or investigation by regulators or prosecutors." *Id.*; *see also In re Pfizer Inc. S'holder Derivative Litig.*, 780 F. Supp. 2d

---

[9] Ormat acknowledges and agrees that the Reforms contemplated by the Settlement "confer substantial benefits upon Ormat and its stockholders." Stip. at ¶ 2.B.

336, 342 (S.D.N.Y. 2011) (approving settlement of shareholder derivative action where the corporate benefits included "a significantly improved institutional structure for detecting and rectifying the types of wrongdoing that have, in recent years, caused extensive harm to the company"); *Unite Nat'l Ret. Fund v. Watts*, No. 04-CV-3603 (DMC), 2005 U.S. Dist. LEXIS, at \*9 (D.N.J. Oct. 28, 2005) (non-monetary benefits support settlement where "the relief is intended to prevent future harm").

Here, the Settlement achieves for Ormat and Current Ormat Shareholders the substantial benefit of numerous reforms that will materially improve the Company's corporate governance. *See* Stip., Ex. A. The allegations in the Consolidated Derivative Action stem from failures of accounting and disclosure that led to the propagation of misleading information regarding Ormat and its financial statements. The Reforms directly address these allegations with well-targeted enhancements designed to improve, among other things, the Company's internal controls over accounting and tax reporting, the main cause for Ormat's restatement and GAAP violations, compliance with applicable laws, rules, and regulations regarding financial reporting, encouragement of internal reporting of Company problems and director and employee education. The Reforms are designed to promote increased transparency of the Company's internal controls and corporate governance, all of which are well-targeted to ensure that financial restatements and the issuance of false and misleading statements to the public are avoided in the future.

The required adoption of previously absent corporate governance procedures or mechanisms (like the Reforms) confers substantial benefits to the nominal corporate defendant in a derivative suit, particularly where, as here, they are directly related to the allegations raised and will bring immediate and substantial benefits to the Company that far outweigh the speculative potential of any monetary recovery that may or may not be realized years down the road. *See In re Intel Corp. Derivative Litig.*, No. 09-867-JJF, 2010 U.S. Dist. LEXIS 74661, at \*6-7 (D. Del. July 22, 2010) ("the Court finds that the corporate governance reforms initiated by Intel as a result of the parties' negotiations and this Settlement have value to both the Company and its shareholders both currently and in the long-term, and that these benefits outweigh the speculative potential of any monetary payment from the relevant insurance policies."); *Maher*, 714 F.2d at 466 ("Parties to the settlement of a shareholders' derivative action are, however, permitted great freedom in shaping the form of the settlement consideration . . .

a settlement may fairly, reasonably, and adequately serve the best interest of a corporation, on whose behalf the derivative action is brought, even though no direct monetary benefits are paid by the defendants to the corporation.") (internal citations omitted); *In re Infinity Broad. Corp. S'holders Liitg.*, 802 A.2d 285, 290 (Del. 2002) (settlement's future impact on corporation is properly considered and it would be reversible error for a court to only consider immediate tangible results in determining the fairness of a proposed settlement).

### 4. The Reaction of Current Ormat Shareholders Also Supports a Finding That the Settlement Should Be Finally Approved

On November 24, 2020, the Court entered the Preliminary Approval Order. ECF No. 59. Pursuant to the Preliminary Approval Order, Current Ormat Shareholders were apprised of all material terms of the Settlement, including the Fee and Expense Award, and of the February 22, 2021 deadline for the submission and filing of any objections. Hopkins Decl., ¶ 31. On December 2, 2020, and in accordance with the Preliminary Approval Order, the Notice was filed on Form 8-K with the SEC as well as published on the Company's "Investor Relations" page. *Id.* Pursuant to the terms of the Preliminary Approval Order, any objections to the settlement must be filed with the Court and served on the parties' counsel no later than February 22, 2021. ECF No. 59. To date, Plaintiff's counsel has not received a single objection from any of Ormat's Current Stockholders. Hopkins Decl., ¶¶ 11, 31. This strongly supports the fairness, reasonableness, and adequacy of the settlement. *IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 3:09-cv-00419-MMD-WGC, 2012 U.S. Dist. LEXIS 151498, at *10 (D. Nev. Oct. 19, 2012) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.").

Current Ormat Shareholders' lack of opposition to the Settlement strongly supports the conclusion that the Settlement is fair, reasonable, and adequate, and that it therefore should be finally approved.

### 5. Opinion of Plaintiff's Counsel

"In evaluating whether the settlement reached is fair and reasonable, [i]t also is appropriate for the court to defer to the judgment of the lawyers supporting the proposed settlement." *IBEW Local*, 2012 U.S. Dist. LEXIS 151498, at *8 (internal quotation marks omitted). As the Ninth Circuit

explains, this is due to the fact that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Pac. Enters.*, 47 F.3d at 378. Accordingly, a settlement enjoys a presumption of fairness if it "is recommended by . . . counsel after arm's-length bargaining." *Villanueva v. Morpho Detection, Inc.*, No. 13-cv-05390-HSG, 2015 U.S. Dist. LEXIS 106183, at *14 (N.D. Cal. Aug. 12, 2015). Such a presumption applies here because the Settlement is the product of arm's-length negotiations conducted by experienced counsel knowledgeable in complex shareholder derivative litigation, with the oversight and assistance of a skilled Mediator. *See, e.g.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").

Here, Plaintiff's Counsel are highly experienced in both shareholder class and derivative actions and have litigated scores of shareholder derivative actions to successful resolution.[10] In addition, White & Case LLP, an internationally recognized corporate defense firm, represents the defendants in the Consolidated Derivative Action and also served as defense counsel in the Securities Class Action.[11] This supports a presumption that the Settlement is fair and reasonable. *See, e.g.*, *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."); *In re Atmel Corp. Derivative Litig.*, No. C 06-4592 JF (HRL), 2010 U.S. Dist. LEXIS 145551, at *43 (N.D. Mar. 31, 2010) ("[T]he involvement of multiple counsel from different firms suggests a lack of collusion."); *Hughes v. Microsoft Corp.*, No. C98-1646C, 2001 U.S. Dist. LEXIS 5976, at *21 (W.D. Wash. Mar. 21, 2001) ("[C]ounsel's opinion is accorded considerable weight and supports the fairness and adequacy of the proposed settlement.").

Plaintiff's Counsel have made a considered judgment based on their knowledge of the facts of the Consolidated Derivative Action and their extensive experience that the Settlement is in the best interests of Ormat and Current Ormat Shareholders and is an excellent achievement under all

---

[10] *See* firm résumés of Gainey McKenna & Egleston, Levi & Korsinksy, LLP, and Bragar Eagel & Squire, P.C., attached to the Hopkins Declaration as Exhibits 1, 2, and 3, respectively.

[11] As noted, Defendants do not oppose the Settlement.

1  the circumstances. The fact that the Settlement is the product of arm's-length negotiations by

2  experienced counsel, with the assistance of a respected mediator, supports a presumption of fairness

3  and final approval of the Settlement. Accordingly, the Settlement should be finally approved.

4  **V.  PLAINTIFF'S COUNSEL IS ENTITLED TO THE REQUESTED ATTORNEYS'
   **FEES AND EXPENSE AWARD UNDER THE SUBSTANTIAL BENEFIT**
5  **DOCTRINE**

6          The Supreme Court has long recognized the value of derivative actions. In *Cohen v. Benefit*

7  *Indus. Loan Corp.*, 337 U.S. 541, 548 (1949), the Supreme Court held:

8          This remedy [derivative actions], born of stockholder helplessness, was long the chief
        regulator of corporate management and has afforded no small incentive to avoid at
9          least grosser forms of betrayal of stockholders' interests. It is argued, and not without
        reason, that without it there would be little practical check on such abuses.
10

11  *Id*. "Under the 'substantial benefit' doctrine, counsel who prosecute a shareholders' derivative case

12  which confers benefits on the corporation are entitled to an award of attorneys' fees and costs." *In re*

13  *NVIDIA Corp. Derivative Litig.*, 2009 U.S. Dist. LEXIS 24973, at *12 (N.D. Cal. Mar. 18, 2009)

14  ("*NVIDIA II*") (citing *Mills*, 396 U.S. 375). "[T]he stress placed by Congress on the importance of

15  fair and informed corporate suffrage leads to the conclusion that, in vindicating the statutory policy,

16  petitioners have rendered a substantial service to the corporation and its shareholders," which

17  "justif[ies] an award of counsel fees, regardless of whether the benefit is pecuniary in nature." *Mills*,

18  396 U.S. at 395-96.

19          In determining the reasonableness of a requested fee award under the substantial benefit

20  doctrine, courts in the Ninth Circuit look to the following factors: (1) whether the requested fee award

21  was the product of arm's length negotiations; (2) the benefit achieved; (3) the contingent nature of

22  counsel's representation; (4) fees awarded in similar cases; and (5) the reaction of the stockholders.

23          As discussed below, each of these factors weighs in favor of approving the requested Fee and

24  Expense Award.

25      **A.  The Requested Fee and Expense Award Was the Product of Arm's Length**
           **Negotiations Free of Collusion**
26

27          In recognition of the substantial benefits provided to Ormat and Current Ormat Shareholders

28  from the valuable corporate governance reforms negotiated in the Settlement of the Actions, Ormat

1    has agreed to cause the Settling Defendants' insurers to pay Plaintiff's Counsel $399,000 for

2    Plaintiff's Counsel's attorneys' Fee and Expense Award. Hopkins Decl. ¶8. The U.S. Supreme Court

3    has long endorsed this type of consensual resolution of attorneys' fees as the ideal towards which

4    litigants should strive. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's

5    fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount

6    of a fee."). Absent evidence of collusion, a negotiated fee is entitled to substantial weight and

7    deference. *See generally Court Awarded Attorney's Fees, Report of the Third Circuit Task Force*,

8    108 F.R.D. 237 (1985); *see also Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001)

9    (where there is no evidence of collusion and no detriment to the parties, the court should give

10    "substantial weight to a negotiated fee amount").

11          There is no question that the agreed-upon Fee and Expense Award was properly bargained

12    for, made in good faith and is fair and reasonable. Indeed, the requested Fee and Expense Award was

13    negotiated only after the Settling Parties had negotiated and agreed to all the terms of the proposed

14    Settlement. Hopkins Decl., ¶ 20. Thereafter, with the aid of an experienced Mediator, the parties

15    engaged in arm's length negotiations with respect to attorneys' fees to compensate Plaintiff's Counsel

16    for the substantial benefits they created for Ormat and its stockholders, culminating in a double-blind

17    Mediator proposal accepted by both sides. *Id*. To bring about the substantial benefit achieved by the

18    Settlement, Plaintiff's Counsel spent 719.20 hours litigating this case amounting to an aggregate

19    lodestar of approximately $464,149. This includes $430,200.50 in time spent by Plaintiff's Counsel's

20    attorneys, and $33,948.75 in time spent by Plaintiff's Counsel's professional support staff. In

21    addition, Plaintiff's Counsel incurred approximately $8,114.55 in litigation expenses. The $399,000

22    Fee and Expense Award is approximately 84% of $472,263.55 – Plaintiff's Counsel's aggregate

23    lodestar plus expenses. The requested $399,000 Fee and Expense Award, therefore, represents a

24    significant discount. Further details regarding the time Plaintiff's Counsel spent litigating this case,

25    and expenses incurred, can be found in the concurrently-filed Plaintiff's Counsel's Declarations in

26    Support of Final Approval of the Fee and Expense Award, attached as Exhibits 4-8 to the Hopkins

27    Declaration. Therefore, this agreement deserves substantial deference and should be approved.

28

**B.** **Plaintiff's Counsel Conferred a Substantial Benefit on Ormat and Its Stockholders**

The requested Fee and Expense Award is appropriate in light of this Circuit's recognition that corporations (and stockholders) receive substantial benefits from changes in corporate governance or policies that result from stockholder litigation. *See Graham v. Hutcheson*, No. 08 CV 0246 MMA (NLS), 2010 U.S. Dist. LEXIS 152275, at *7-8 (S.D. Cal. Sept. 22, 2010). ("[T]he new and revised corporate governance policies required under the settlement will confer a substantial benefit on Leap and its shareholders. . . thereby reducing the risk of similar errors in the future . . . .  Because Plaintiff's counsel has conferred a substantial benefit on the corporation through prosecuting this action, they are entitled to an award of attorneys' fees."). *See also Atmel*, 2010 U.S. Dist. LEXIS 145551, at *40 (N.D. Cal. 2010) ("the Court concludes that the agreed-upon amount of attorneys' fees and costs . . . is reasonable in light of the overall benefit of the settlement to *Atmel* and its shareholders"); *see also In re Rambus Inc. Derivative Litig.*, No. C 06-3513 JF (HRL), 2009 U.S. Dist. LEXIS 131845, at *11 (N.D. Cal. Jan. 20, 2009) ("Attorneys who prosecute a shareholder derivative action that confers 'substantial benefit' on the corporation are entitled to an award of attorneys' fees . . . [C]ourts consistently have approved attorneys' fees and expenses in shareholder actions where the plaintiffs' efforts resulted in significant corporate governance reforms but no monetary relief.").

As noted above, Section B.3., *supra*, this Settlement provides for substantial benefits to Ormat and its shareholders in the form of corporate governance enhancements. Such benefits conferred on the Company easily justify attorneys' fees and expenses in the amount of $399,000 to Plaintiff's Counsel. Therefore, the agreed to proposed Fee and Expense Award should be approved.

**C.** **The Contingent Nature of Plaintiff's Counsel's Representation Supports the Requested Fee and Expense Award**

In addition to the substantial benefits to the Company, the Court should also consider the contingent nature of Plaintiff's Counsel's fee. "Courts have long recognized that the attorneys' contingent risk is an important factor in determining the fee award and may justify awarding a premium over an attorney's normal hourly rates." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D.

///

443, 457 (E.D. Cal. 2013) (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299

(9th Cir. 1994)). As the Ninth Circuit has held:

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. *See* Richard Posner, ECONOMIC ANALYSIS OF LAW § 21.9, at 534-35 (3d ed. 1986). Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.

*Wash. Pub. Power Supply*, 19 F.3d at 1299. Plaintiff's Counsel took substantial risks in prosecuting

Plaintiff's claims, including the real possibility of receiving no compensation for their work. *In re

Prudential-Bache Energy Income P'ships Sec. Litig.*, MDL Docket No. 888 Section "E", 1994 U.S.

Dist. LEXIS 6621, at *16 (E.D. La. May 18, 1994). As the *Prudential* court recognized:

> Although today it might appear that risk was not great based on [the] global settlement with the Securities and Exchange Commission, such was not the case when the action was commenced and throughout most of the litigation. Counsel's contingent fee risk is an important factor in determining the fee award. Success is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable. Counsel advanced all of the costs of litigation, a not insubstantial amount, and bore the additional risk of unsuccessful prosecution.

*Id.*

### D.   Fee and Expense Awards in Similar Actions Support Approval of the Negotiated Fee and Expense Award

The Fee and Expense Award is within the range of fees that courts have previously approved

in shareholder litigation where the plaintiffs' efforts resulted in valuable corporate governance relief.

*See, e.g.*, *In re Maxwell Techs., Inc.*, No. 13CV966 BEN (RBB), 2015 U.S. Dist. LEXIS 189165, at

*18 (S.D. Cal. July 13, 2015) (approving "attorneys' fee award of $1,086,089 for all Plaintiff's

Counsel" in a settlement making changes to the company's corporate governance policies by way of

strengthening internal controls concerning revenue recognition, financial risk; the functioning of

Maxwell's Audit Committee; and to enhance the independence and accountability of the Board);

*NVIDIA II*, 2009 U.S. Dist. LEXIS 24973 (awarding $2,030,000 in fees and expenses to the attorneys

in the derivative action for the pecuniary and non-pecuniary benefits of the settlement; the non-

pecuniary benefits of NVIDIA's corporate governance reforms include, but are not limited to, modifications to policies and procedures regarding the appointment and duties of a Lead Independent Director, the composition of NVIDIA's Board, the compensation of NVIDIA's officers and directors, stock ownership requirements for NVIDIA's officers and non-employee directors and the education of the Company's directors); *Young v. Ault*, No. CV 18-6587 PA (PLAx), 2020 U.S. Dist. LEXIS 131898, at *10-11 (C.D. Cal. July 14, 2020) (awarding $600,000 in attorneys' fees for corporate governance reforms that included, among other things, changes to the Board's structure, adding independent directors, amendments to the whistleblower policy and compensation claw back policy); *Rambus*, 2009 U.S. Dist. LEXIS 131845, at *7-8 (awarding $2 million in attorneys' fees for corporate governance reforms that included, among other significant amendments, to the Compensation Committee Charter, external reporting oversight, employee education and training in regulations and reporting).

Accordingly, the Fee and Expense Award is fair, reasonable, and adequate in light of the type of corporate governance reforms achieved here and consistent with fee awards in similar cases.

**E.    The Reaction of Ormat Shareholders to the Settlement and Lack of Any Objections Supports the Requested Fee and Expense Award**

On December 2, 2020, and in accordance with the Preliminary Approval Order, the Court-approved Notice to Current Ormat Shareholders was filed on Form 8-K with the SEC as well as published on the Company's "Investor Relations" page. Hopkins Decl. ¶ 33. To date, there have been no objections to any aspect of the Settlement, including Plaintiff's Counsel's requested Fee and Expense Award. *Id.* The lack of stockholder objections further supports the fairness of the fee request. *See Young*, 2020 U.S. Dist. LEXIS 13189, at *10 ("The Court finds that the lack of opposition from DPW shareholders weighs in favor of final approval of the Settlement Agreement."); *see also Graham*, 2010 U.S. Dist. LEXIS 152275, at *8 ("The absence of any objections to the settlement also creates a strong presumption that it is favorable to the class members."); *see also Van Der Gracht De Rommerswael v. Auerbach*, No. SACV 18-00236 AG (JCGx), 2019 U.S. Dist. LEXIS 224924, at *12 (C.D. Cal. Jan. 7, 2019) (In approving the settlement, including awarding attorneys' fees, the court considered that no objections to settlement had been received).

## VI.   A SERVICE AWARD SHOULD BE APPROVED

Plaintiff's Counsel also seeks a modest Service Award for Plaintiff Klein in the amount of $5,000 to be paid from the Fee and Expense Award. Plaintiff's Counsel submits that this modest Service Award should also be approved as there were no benefits achieved on behalf of Ormat but for the participation of Plaintiff Klein. As the requested Service Award will be deducted from the Fee and Expense Award, there will be no additional cost to the Company or its insurers. *See Mego*, 213 F.3d at 463; *In re Cendant Corp., Derivative Action Litig.*, 232 F. Supp. 2d 327, 344 (D.N.J. 2002) (service awards "reward the public service performed by lead plaintiffs.").

## VII.   CONCLUSION

The Settlement represents a fair, adequate, and reasonable result in light of the nature and strength of Plaintiff's claims, the defenses thereto, the risks associated with continued litigation, and all other pertinent facts and circumstances. Moreover, the agreed-to Fee and Expense Award is entirely fair and reasonable based on the substantial benefits achieved in the Consolidated Derivative Action. Accordingly, for all of the foregoing reasons, Plaintiff respectfully requests that the Court finally approve the Settlement and the Fee and Expense Award.

Dated: February 10, 2021

**MATTHEW L. SHARP, LTD.**

By: *Matthew L. Sharp*
Matthew L. Sharp
432 Ridge Street
Reno, Nevada 89501
Telephone: (775) 324-1500
Email: matt@mattsharplaw.com
*Co-Liaison Counsel for Plaintiff*

**GAINEY McKENNA & EGLESTON**

By: *Thomas J. McKenna*
Thomas J. McKenna
Gregory M. Egleston
501 Fifth Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 983-1300
Facsimile: (212) 983- 0383
Email: tjmckenna@gme-law.com
Email: gegleston@gme-law.com
*Co-Lead Counsel for Plaintiff*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ALDRICH LAW FIRM, LTD.**


By:   *John P. Aldrich*
     John P. Aldrich, Esq. (6877)
     1601 S. Rainbow Blvd., Suite 160
     Las Vegas, Nevada 89146
     Telephone: (702) 853-5490
     Facsimile: (702) 227-1975
     Email: jaldrich@johnaldrichlawfirm.com
*Co-Liaison Counsel for Plaintiff*

**LEVI & KORSINSKY, LLP**


By:   *Shannon L. Hopkins*
     Shannon L. Hopkins
     1111 Summer Street, Suite 403
     Stamford, Connecticut, 06906
     Telephone: (203) 992-4523
     Facsimile: (212) 363-7500
     Email: shopkins@zlk.com
*Co-Lead Counsel for Plaintiff*

**BRAGAR EAGEL & SQUIRE, P.C.**


By:   *Melissa A. Fortunato*
     Melissa A. Fortunato
     810 Seventh Avenue, Suite 620
     New York, New York, 10019
     Telephone: (212) 308-5858
     Facsimile: (212) 214-0506
     E-mail: fortunato@bespc.com
*Additional Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I hereby certify that I am an employee of MATTHEW L. SHARP, LTD., and that on this date, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to:

Douglas P. Baumstein @ dbaumstein@whitecase.com
Dominique Forrest @ dominique.forrest@whitecase.com
Matthew C. Addison @ maddison@mcdonaldcarano.com
Sarah Ferguson @ sferguson@mcdonaldcarano.com

DATED this 11th day of February 2021.


_____
/s/ Cristin B. Sharp
An Employee of Matthew L. Sharp, Ltd.